**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| MARCUS RAMOS, SR, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 22 C 3426 |
| | ) | |
| v. | ) | |
| | ) | Judge Jorge L. Alonso |
| CHRISTIAN NICKERSON, | ) | |
| | ) | |
| Defendant. | ) | |

### MEMORANDUM OPINION AND ORDER

Plaintiff Marcus Ramos ("Plaintiff") brings this action against Christian Nickerson[1]

("Defendant") asserting claims for alleged constitutional violations. Defendant has moved to

dismiss under Federal Rules of Procedure 12(b)(1) for lack of subject matter jurisdiction and

12(b)(6) for failure to state a claim. For the following reasons, Defendant's motion to dismiss is

granted.

### BACKGROUND[2]

Plaintiff's third amended complaint ("Complaint") is not a model of clarity. Plaintiff

alleges that Defendant, a "caseworker" for the Illinois Department of Children and Family

Services ("DCFS"), "attempted to kidnap[] [his] daughter L.R. without proper court orders when

---

[1] Plaintiff lists the Defendant as "Christian" Nickerson in the caption and as "Christiana" Nickerson elsewhere.

[2] The following factual background is taken from the allegations in Plaintiff's third amended complaint (ECF No. 14), which are taken as true and construed in Plaintiff's favor for purposes of Defendant's motions to dismiss. *See Zahn v. N. Am. Power & Gas, LLC*, 815 F.3d 1082, 1087 (7th Cir. 2016). As explained further below, the Court also considers "documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice," along with additional facts set forth in Plaintiff's brief opposing dismissal (ECF No. 67), so long as those additional facts "are consistent with the pleadings." *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1020 (7th Cir. 2013) (internal quotation marks omitted).

she tried to [snatch] [his] daughter L.R. out [of] [his] fiancé Lametra Phillips['] arms when she was nursing [their] daughter[,]" thereby "injur[ing] [Lametra's] nipple when [L.R.] clamped down on her breast[.]" (Compl. 2, ECF No. 14.)[3]

Plaintiff further alleges that when Defendant "attempted to kidnap [his] daughter out of the home without proper paperwork and warrant from the courts" and that "after she attempted to do so[, she] lied to Chicago Police Department officers stat[ing] that [Plaintiff's] daughter was [in] danger [and] that [her] mother [was] being improper with [Plaintiff's] daughter L.R." (*Id.*) Plaintiff alleges that "[t]he whole thing was recorded on a[] hidden camera when Mrs. Nickerson and her other co-worker tried to physical[ly] force [his] fiancé Lametra Phillips downstairs to get in th[eir] car and go to court and put on an[] Order of Protection against [Plaintiff] when [he] was not even accused of harming [his] family." (*Id.*) Plaintiff further alleges that Defendant "LIED about [d]omestic [v]iolence and ongoing [d]omestic [v]iolence when the report stated that my daughter L.R. was ran [*sic*] over by a car." (*Id.*) Plaintiff alleges that Defendant violated Plaintiff's "right [to a] fair hearing in state court" and "also violated [his] right when she engaged into my house forcefully without obtaining legal warrants." (*Id.*) Plaintiff alleges Defendant "deprived [him] of his civil rights under the title 18 U.S.[C. §] 242" and purports to seek a fine or imprisonment thereunder. (*Id.*)

Plaintiff states some additional facts in his opposition to Defendant's motion to dismiss ("Opposition") and submits two documents as exhibits that flesh out Plaintiff's Complaint.

---

[3] As this Court previously noted with respect to Plaintiff's second amended complaint, it again appears that Plaintiff may be attempting to assert claims on behalf of Lametra Phillips. While Plaintiff can include relevant facts as background information in a complaint, a "pro se litigant, even one who is a licensed attorney, is not allowed to represent other people on appeal or in the district court." *Davis v. Anderson*, 718 Fed. Appx. 420, 423 (7th Cir. 2017) (citations omitted); 28 U.S.C. § 1654. No one else is listed in the caption, and no one else signed the complaint. Ramos is the only plaintiff in this case.

Courts may consider factual allegations made by a *pro se* litigant in their response in opposition to a motion to dismiss without converting the motion to one for summary judgment as long as the facts are consistent with the allegations of the complaint. *Clark v. Law Office of Terrence Kennedy, Jr.*, 709 F. App'x 826, 829 (7th Cir. 2017) (considering attachment to *pro se* plaintiff's brief in opposition to motion to dismiss); *Smith v. Dart*, 803 F.3d 304, 311 (7th Cir. 2015) ("[F]acts alleged by a plaintiff in a brief in opposition to a motion to dismiss may be considered when evaluating the sufficiency of a complaint so long as they are consistent of the allegations in the complaint." (citations and punctuation omitted)).

The additional facts and documents that Plaintiff submits are consistent with the allegations of the Complaint. Plaintiff states in part,

> In this case this civil suit was opened up due to Christina Nickerson['s] . . . perjuries in state court . . . . Christina Nickerson knew what the investigation report stated to go follow up on and it never stated anything about domestic violence[,] so yes that is a finding to move forward with the case due to her liability [perjuring] herself into [*sic*] state court and forcing . . . AAG or Judge to draw up a[] warrant[.] [T]here was also strong evidence that the hospital person[nel] stated the child was safe to go home so if there was an[y] domestic violence the child would've been taken at the hospital. Christina Nickerson damaged my family [and] split my family apart for no reason over a[] car accident concern[,] not no [*sic*] domestic violence issues[,] and she used that [to] . . . [perjure] herself in[] state court[,] . . . and [she] continued to [perjure] herself in[] state court with the help of the prosecutor telling her what to say[,] all [of which was] caught on zoom.

(Opp'n 2 of 9, ECF No. 67.)[4]

Plaintiff further states that Defendant "got [him] fired due to her lack of ability to serve [him] paperwork properly notifying [him] to go to work that Wednesday on June 29th[,] 2022." (*Id.*)

---

[4] The pages of Plaintiff's Opposition are not numbered in any manner and so the Court refers herein to the PDF pagination.

As an exhibit, Plaintiff submits an "After Visit Summary" from UChicago Medicine dated June 20, 2022, that purports to summarize L.R.'s treatment for "bruised ribs" after a car accident in which L.R. was a "pedestrian." (*Id*. at 6 of 9.)

Plaintiff also submits a DCFS "Safety Plan" dated June 20, 2022, bearing what appears to be Plaintiff's signature. (*Id*. at 7–9 of 9.) The Safety Plan notes a "safety threat" "that led to the need for a safety plan"—namely, "[a] caregiver, paramour or member of the household whose behavior is violent and out of control." (*Id*. at 7 of 9.) Portions of the Safety Plan are handwritten and illegible. As far as the Court can make out, the Safety Plan indicates that the "basis for taking protective custody and for developing a safety plan with the family" were, "Father was the caretaker of the child when she got hit by a car & the circumstances are un[illegible]." (*Id*. at 8 of 9.) The Safety Plan appears to further state, "Mother Lametra Phillips will be the sole caretaker of the child" and "will ensure father does not reside in the home & all contact with the child is supervised[.]" (*Id*.) The Safety Plan indicates that DCFS will "investigate the allegation in the report" and that the Safety Plan "will be in effect for 5 days." (*Id*.)

Defendant submits four documents as exhibits to its reply brief that are court records from Case No. 22JA470 in the Circuit Court of Cook County, Illinois, Department of Juvenile Justice and Child Protection, Child Protection Division. Specifically, Defendant submits a Temporary Custody Hearing Order dated June 29, 2022, a Petition for Adjudication of Wardship filed June 29, 2022 (the "Petition"), a Motion for Temporary Custody filed June 29, 2022, and an Affidavit Documenting DCFS Efforts signed by Defendant on June 28, 2022, and filed the next day (the "Affidavit"). (*See* ECF No. 72-1.) Defendant argues that the Court may take judicial notice of the court records, and the Court agrees. *See J.B. v. Woodard*, 997 F.3d 714, 717 (7th Cir. 2021) ("We can also take judicial notice of matters of public record, including court filings

4

and documents from the ongoing state court proceedings incorporated into the federal complaint."); *4901 Corp. v. Town of Cicero*, 220 F.3d 522, 527 n. 4 (7th Cir. 2000) (district court may take judicial notice of state court order); *Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994) ("[T]he district court may also take judicial notice of matters of public record without converting a 12(b)(6) motion into a motion for summary judgment." (citation and punctuation omitted)); *Hebein ex rel. Berman v. Young*, 37 F. Supp. 2d 1035, 1039 (N.D. Ill. 1998) ("The DCFS defendants provide court orders and pleadings from state court custody proceedings and a related criminal case against Norman. . . . Judicial notice of these documents may be taken without converting the DCFS defendants' motion into one for summary judgment.").

The Petition states that L.R. was "not taken into custody," that L.R. "was neglected pursuant to Juvenile Court Act, section 0702 405/2-3(1) (b)" and "is a minor under 18 years of age whose environment is injurious to her welfare." (Petition 5–6 of 11.)[5] The Petition states as supporting facts,

> Parents have five other minors who are or were in the custody of Child Protective Services in Lorain County in Ohio with findings having been entered. In December of 2020 an intact case was opened. Offered and recommended services are ongoing. Mother has been diagnosed with [redacted]. On or about June 20, 2022 putative father was involved in an altercation with another adult while this minor was present. This minor was injured due to this altercation and taken to the hospital for further medical treatment. This minor was observed to have an abrasion and redness on her chest as well as her liver enzymes were elevated. A safety plan, which prevented putative father from having contact with this minor, was created after the June 20, 2022 incident. On or about June 24, 2022 it was discovered that parents had violated the safety plan and putative father had returned to the family's apartment to reside with mother and this minor. Putative father was observed displaying erratic and aggressive behaviors with DCFS and intact personnel while this minor was present. Parents refused to comply with DCFS and intact personnel's requests that they turn this minor over to them. There is a history of domestic violence between the parents. Mother and putative father reside together. Paternity has not been established.

(*Id*. at 5 of 11.)

---

[5] The Court refers herein to the ECF pagination of Defendant's combined Exhibit A.

The Petition also states,

> The minor was abused in that his/her parent or immediate family member, or any person responsible for his/her welfare, or any person who is in the same family or household as the minor, or any individual residing in the same home as the minor, or a paramour of the minor's parent, pursuant to the Juvenile Court Act section . . . 0705 405/2-3(2) (ii); Creates a substantial risk of physical injury to such minor by other than accidental means which would be likely to cause death, disfigurement, impairment of emotional health, or loss or impairment of any bodily function.

(*Id.*)

The Motion for Temporary Custody and the Affidavit were filed the same day as the Petition. Defendant executed the Affidavit on June 28, 2022—eight days after L.R.'s hospital record indicates she was treated for injuries as a pedestrian in a car accident and Plaintiff signed the Safety Plan. The Affidavit makes similar statements as the Petition and adds, "NF reported ACV was ran over by OPWI after they were engaged in a verbal altercation regarding money owed. . . . NF exhibit[ed] blatant disregard of parental responsibilities as he engaged in a verbal and physical altercation in the presence of ACV and le[ft] ACV unattended." (Affidavit at 11 of 11.) The Court infers that "NF" refers to Plaintiff, "ACV" refers to L.R., and "OPWI" refers the other adult involved in the altercation with Plaintiff.

The Affidavit also adds, in part,

> Upon arrival to the home immediately after the phone call NF appeared outside in the front and was aggressive towards CPI and Intact Worker in the presence of responding officers and made threats to harm CPI and Intact Worker. NF refused to allow NM to obtain an Order of Protection to keep NF away from ACV. NM refused to obtain OP after NF convinced NM to not comply. NM refused to allow CPI, Intact Worker, or police in the home after CPI informed parents protective custody was a necessary measure that needed to be taken at the time due to NF and NM domestic violence history, NF's mental and emotional state, NM's inability to exercise best judgment for ACV. Protective custody was not take[n] of ACV due to NM and NF's refusal to comply with CPI or law enforcement.

(*Id*. at 10 of 11.) The Court infers that "NM" refers to Lametra Phillips, L.R.'s mother.

6

The Circuit Court of Cook County entered a Temporary Custody Hearing Order on June 29, 2022, that found "probable cause" existed that L.R. "is abused/neglected/dependent" based on the allegations in the Petition. (Temporary Custody Hearing Order 2 of 11.) The court further found based on the allegations in the Petition that "[i]mmediate and urgent necessity . . . does exist to support removal of [L.R.] from the home and continuation in the home is contrary to the minor's welfare." (*Id.*) The court also found that "[r]easonable efforts . . . have been made but have not eliminated the immediate and urgent necessity to remove the minor from the home[.]" (*Id.*) The court noted that both L.R.'s mother and father received notice of the hearing and that the father was present at the hearing. The court entered the order: "Consistent with the health, safety and best interests of the minor, the minor shall be removed from the home; and 1. Temporary custody of the minor is granted to . . . b. DCFS Guardianship Administrator with the right to place the minor[:] Janet Wukas Ahern." (*Id.* at 3 of 11.) The court ordered DCFS to prepare and file with the court a "45 day Case Plan" by August 23, 2022, and ordered a "Social Investigation" to be filed by July 29, 2022. (*Id.* at 3 of 11.) The court set a status hearing for August 25, 2022. (*Id.*)

## DISCUSSION

### I.     Rule 12(b)(1)—Subject Matter Jurisdiction

#### A.  Legal Standard

A motion under Rule 12(b)(1) challenges the Court's subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). It is well-settled that the jurisdiction of the federal courts is limited, and that no presumption of federal jurisdiction exists. *Preston v. Purtrell*, 410 F.2d 234, 236 (7th Cir. 1969). A complaint must affirmatively allege such facts as will support the existence of federal jurisdiction. *Id.* Typically, on a Rule 12(b)(1) motion, courts "read a complaint liberally and

accept as true the well pleaded allegations of the complaint and the inferences that may be reasonably drawn from those allegations." *Sapperstein v. Hager*, 188 F.3d 852, 855 (7th Cir. 1999) (citation and internal punctuation omitted).

### B. Discussion

Plaintiff alleges that the Court has jurisdiction under 18 U.S.C. § 242. Defendant argues that that section does not confer a private cause of action and so this case should be dismissed for lack of subject matter jurisdiction. The Court agrees that Plaintiff has no power to bring a cause of action under 18 U.S.C. § 242. *See Nicolai v. State of Wisconsin*, No. 21-CV-414, 2021 WL 3685193, at *2 (E.D. Wis. Apr. 22, 2021) (no private cause of action under 18 U.S.C. § 242), *report and recommendation adopted sub nom. Nicolai v. Wisconsin*, No. 21-CV-414-PP, 2021 WL 2981296 (E.D. Wis. July 15, 2021); *Pawelek v. Paramount Studios Corp.*, 571 F. Supp. 1082, 1083 (N.D. Ill. 1983) (same). To the extent Plaintiff attempts to charge Defendant with the crimes enumerated in that statute, he cannot institute such charges or compel the United States Attorney's Office to do so. *R.S. v. Richard D.*, 410 U.S. 614 (1973) ("[A] private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another."); *In re U.S.*, 572 F.3d 301, 312 (7th Cir. 2009) ("The United States Attorney has the ultimate authority to prosecute cases."). Defendant further argues that Plaintiff has waived any opposition to Defendant's argument by failing to respond to it in his Opposition.

But Plaintiff is proceeding *pro se* and his Complaint must therefore be construed liberally. *Sapperstein*, 188 F.3d at 855. Even though Plaintiff does not expressly state the grounds for jurisdiction, the Court construes Plaintiff's Complaint as alleging a violation under 42 U.S.C. § 1983, which provides a civil cause of action for deprivation of rights under color of law. Plaintiff refers in his Opposition to "1983 . . . COLOR OF LAW," as well as the First, Fifth,

Ninth, and Fourteenth Amendments. The Court infers that Plaintiff is attempting to at least assert a claim for violation of his Fourteenth Amendment right to familial relations—a component of substantive due process. *See Milchtein v. Milwaukee Cty.*, 42 F.4th 814, 821 (7th Cir. 2022). This Court therefore has subject matter jurisdiction over this matter under 28 U.S.C. § 1331 because Plaintiff's complaint alleges actions arising under the Fourteenth Amendment of the United States Constitution. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 n.6 (1987) ("Federal district courts have original jurisdiction over 'all civil actions arising under the Constitution . . . of the United States.'" (quoting 28 U.S.C. § 1983)). However, for the reasons set forth in the next section, the Court abstains from exercising jurisdiction over Plaintiff's due process claims and dismisses the Complaint. The Court need not consider waiver.

## II.   12(b)(6)—Failure to State a Claim

### A.  Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), a claimant must plead facts that are sufficient to state a claim that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A plausible claim requires factual allegations sufficient to support a "reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court must acknowledge all facts provided by the claimant as true; however, any "legal conclusions" should not be accepted as true. *Id*. Pleadings "filed *pro se* [are] to be liberally construed, . . . and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Beal v. Beller*, 847 F.3d 897, 902 (7th Cir. 2017) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)).

### B. Discussion

#### i. Fourteenth Amendment—Substantive Due Process

"The Supreme Court has held that the Fourteenth Amendment's Due Process Clause shields certain aspects of the parent–child relationship from state interference." *Milchtein*, 42 F.4th at 821 (internal citations and punctuation omitted). "This component of substantive due process—sometimes called the right to 'familial integrity' . . . or 'familial relations' . . .— includes a parent's interest in the 'care, custody, and management' of his children." *Id*. (internal citations and punctuation omitted); *see also Brokaw v. Mercer Cty.*, 235 F.3d 1000, 1018 (7th Cir. 2000) (listing cases) ("The Supreme Court has long recognized as a component of substantive due process the right to familial relations."). This "provides heightened protection against government interference with certain fundamental rights and liberty interests[,]" including the right of parents "to bear and raise their children." *Brokaw*, 235 F.3d at 1018.

However, "[t]his right is not absolute, but 'must be balanced against the state's interest in protecting children from abuse.'" *Hernandez ex rel. Hernandez v. Foster*, 657 F.3d 463, 478 (7th Cir. 2011) (quoting *Siliven v. Ind. Dep't of Child Servs.*, 635 F.3d 921, 925 (7th Cir. 2011)). "In weighing these competing interests, . . . [courts] are required to consider: (1) the nature of the privacy interest upon which the action taken by the State intrudes; (2) the character of the intrusion that is complained of; (3) the nature and immediacy of the governmental concern at issue; and (4) the efficacy of the means employed by the government for meeting this concern." *Doe v. Heck*, 327 F.3d 492, 520 (7th Cir. 2003), *as amended on denial of reh'g* (May 15, 2003).

"[A]lthough child welfare caseworkers may investigate allegations of child abuse without violating parents' constitutional right to familial relations, they may not do so arbitrarily." *Id.*

The Court pauses to address two other potential constitutional claims referenced in Plaintiff's Opposition. Plaintiff invokes the Fifth Amendment right to due process, but "[t]he Fifth Amendment right to due process only comes into play when actions are taken under color of federal law, not state law." *Rymek v. Burke*, No. 86 C 5260, 1986 WL 14643, at *1 (N.D. Ill. Dec. 16, 1986); *see also Carreon v. Baumann*, 747 F. Supp. 1290, 1291 (N.D. Ill. 1990) ("The Due Process Clause of the Fifth Amendment only applies to federal officials."). Because the City was not acting under color of federal law, Plaintiff fails to state a claim under the Fifth Amendment and his due process claim will be considered under the Fourteenth Amendment.

Plaintiff also invokes the First Amendment without further explanation. It is possible that Plaintiff attempts to invoke "a right to 'familial association[,]'" which the Seventh Circuit has explained is a "common confusion about the constitutional right to 'association.'" *Milchtein*, 42 F.4th at 822 (citation omitted). "[T]he Constitution protects 'freedom of association in two distinct senses': 'expressive association,' which concerns the ability to associate for First Amendment activities, and 'intimate association,' which is a component of substantive due process and concerns the right to 'enter into and maintain certain intimate human relationships.'" *Id.* (quoting *Roberts v. U.S. Jaycees*, 468 U.S. 609, 617–18 (1984)). Claims, like Plaintiff's, "regarding the custody and care of [a child] are better understood under the rubric of substantive due process." *Id.* (citation omitted). Accordingly, the Court considers Plaintiff's claim under the rubric of substantive due process.

As best the Court can tell, Plaintiff's substantive due process claim appears to have two components: (1) Defendant attempted to remove L.R. from her parents' home without a warrant

or court order on June 24, 2022; and (2) Defendant lied on two occasions, once to the police on June 24, 2022, and once to the circuit court. Broadly speaking, allegations that a defendant knew allegations of child abuse or neglect were false and removed a child without a court order can state a deprivation of a constitutional right. *See, e.g.*, *Siliven*, 635 F.3d at 928–29 (noting that removal of a child without investigation and predeprivation hearing absent exigent circumstances violates the due process clause of the Fourteenth Amendment).

Plaintiff's claim, however, suffers from defects that are ultimately fatal. Starting with the alleged lies, Plaintiff first alleges that Defendant lied to police officers "stat[ing] that my daughter was [in] danger [and] that mother [was] being improper with my daughter L.R." but does not specify when. The Court infers that Plaintiff refers to June 24, 2022, when officers and DCFS workers visited L.R.'s home immediately after discovering that Plaintiff had violated the Safety Plan. The statements that Plaintiff alleges are "lies" are too vague for the Court to infer as falsehoods. L.R. certainly was in "danger" when she was hit by a car and taken to the hospital for related injuries. As for L.R.'s mother "being improper with L.R.," the Court is unable to infer what behavior Plaintiff refers to. Without more, Plaintiff's allegations that Defendant lied to the police is a speculative conclusion that the Court need not assume as true. *See, e.g.*, *United States v. Novartis Pharms. Corp.*, No. 13-CV-3700 (KMW), 2022 WL 4217749, at *5 (S.D.N.Y. Sept. 13, 2022) ("Without more detail . . . Relator's claim that they are 'shams' is merely a conclusory allegation." (citation and internal punctuation omitted)). Further, there is no indication that either Defendant's statements to police officers on June 24, 2022, or any "improper" behavior by Lametra, were the basis for any removal of L.R.

Second, Plaintiff alleges that Defendant "LIED about [d]omestic [v]iolence and ongoing [d]omestic [v]iolence when the report stated that my daughter L.R. was ran [sic] over by a car."

Plaintiff clarifies that he is alleging that Defendant split up his family "over a[] car accident concern[,] not no [sic] domestic violence issues[,] and she used that [to] . . . [perjure] herself in[] state court[,] . . . and [she] continued to [perjure] herself in[] state court with the help of the prosecutor telling her what to say[.]" The Court infers that Plaintiff is alleging that Defendant lied while testifying before the circuit court, possibly at the Temporary Custody Hearing on June 29, 2022. The Court further infers that Plaintiff is alleging that Defendant falsely testified that L.R. needed to be removed due to the concern of ongoing domestic violence even though the Affidavit indicated that Defendant's concern for L.R.'s safety centered around the car accident.

Defendant's testimony before the circuit court is protected by absolute immunity. "[A] social worker pursuing a child-custody case acts like a prosecutor and witness, both of whom are entitled to absolute immunity for their actions taken in court, including in *ex parte* proceedings." *Milchtein*, 42 F.4th at 825 (citing *Millspaugh v. Cty. Dep't of Pub. Welfare*, 937 F.2d 1172 (7th Cir. 1991)). Accordingly, the Seventh Circuit has extended absolute immunity to "social workers and like public officials . . . in child custody cases on account of testimony and other steps taken to present the case for decision by the court." *Id*. (quoting *Millspaugh*, 937 F.2d at 1176).[6] For example, the court found that "in-court conduct" such as the pursuit of a court order for judicial intervention, failure to apprise parents of related hearings, and presentation of testimony and evidence during the hearings (even if false) were entitled to absolute immunity. *Id*. Accordingly, Defendant's in-court testimony is shielded by absolute immunity.

---

[6] However, only "[q]ualified immunity shield[s] the acts of applying for physical custody and retrieving the children," including the application for the initial order to obtain custody, because these actions "were more like those of a police officer applying for a warrant and collecting evidence." *Milchtein*, 42 F.4th at 825 (citing *Millspaugh*, 937 F.2d at 1176); *see also Brokaw*, 235 F.3d at 1014 n.10 (same).

Plaintiff is left with only the allegation that Defendant "attempted" to remove L.R. from her home without a proper court order, without paperwork, and without a warrant. Although Plaintiff does not expressly state the date of this incident, the Court infers from the allegations of the Complaint, the facts stated in Plaintiff's Opposition, and the state court records of which the Court takes judicial notice, that the incident allegedly took place on the day that DCFS discovered that Plaintiff had violated the Safety Plan and immediately went to his home with police officers—June 24, 2022. Although the precise date is not material, it notably falls prior to the Temporary Custody Hearing Order entered on June 29, 2022, ordering L.R.'s removal from her home. But nothing in the allegations or court records indicates that L.R. was actually removed from her home on June 24, 2022, or any time prior to June 29, 2022. In fact, the June 29, 2022, Petition on which the Temporary Custody Hearing Order is based states that L.R. was not taken into custody. Similarly, the Affidavit, signed June 28, 2022, and filed June 29, 2022, states that "[p]rotective custody was not taken of [L.R.]" during the June 24, 2022, visit to L.R.'s home "due to [Lametra] and [Plaintiff's] refusal to comply with CPI or law enforcement." No allegations indicate otherwise.

Having considered the nature of the privacy interests upon which Plaintiff claims Defendant has intruded, and the character of the intrusion complained of, the Court turns to the third and fourth prongs of the familial relations balancing test: "the nature and immediacy of the governmental concern at issue . . . and . . . the efficacy of the means employed by the defendants for meeting this concern." *Heck*, 327 F.3d at 520. "As a threshold matter, these inquires must be considered in tandem to determine whether the governmental actions challenged were based on 'some definite and articulable evidence giving rise to a reasonable suspicion that a child ha[d] been abused or [was] in imminent danger of abuse.'" *Id*. at 521 (quoting *Brokaw*, 235 F.3d at

1019). If not, the state has no interest in protecting children from their parents, and no further balancing of interests is necessary. *Id*. For example, the "threat alone" to remove a child from the custody of her parents—even where that threat was not carried out—can state a claim for violation of the right to familial relations where the child welfare worker "had no reason whatsoever to suspect that [the parents] were abusing their children." *Id*. at 524.

Here, the circuit court entered a Temporary Custody Hearing Order on June 29, 2022, that found "probable cause" existed that L.R. "is abused/neglected/dependent" based on the allegations in the Petition, which described Plaintiff's history of domestic violence, altercation with a third party that resulted in L.R. being hit by a car and going to the hospital for related injuries, violation of the Safety Plan, and aggressive behavior towards DCFS personnel. The circuit court further found based on the allegations in the Petition that "[i]mmediate and urgent necessity . . . does exist to support removal of [L.R.] from the home and continuation in the home is contrary to the minor's welfare." The circuit court also found that "[r]easonable efforts . . . have been made but have not eliminated the immediate and urgent necessity to remove the minor from the home[.]"

The factual bases for Defendant's attempt to remove L.R. from her home on June 24, 2022, and the circuit court's June 29, 2022, removal order are the same. Deciding whether Defendant's attempted removal on June 24, 2022, was based on "some definite and articulable evidence giving rise to a reasonable suspicion that a child had been abused or was in imminent danger of abuse[,]" *Heck*, 327 F.3d at 521 (citation omitted) (cleaned up), would consequently require this Court to call into question the circuit court's ruling. In other words, a finding by this

Court that Defendant had no reason to suspect child abuse or neglect (which the Court does not find) would imply that the circuit court's opposite ruling is invalid.

Defendant argues that this action is barred by *Heck v. Humphrey*, in which the Supreme Court held that a plaintiff who has been convicted of a crime cannot maintain a Section 1983 claim where a "judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence[.]" 512 U.S. 477, 487 (1994). Defendant argues that the *Heck* rule "is 'intended to prevent collateral attack on a criminal conviction through the vehicle of a civil suit.'" *McCann v. Neilsen*, 466 F.3d 619, 621 (7th Cir. 2006). Defendant argues that the validity of the Temporary Custody Hearing Order is called into question by Plaintiff's claims against Defendant, pointing to *Alberici v. Cty. of Los Angeles*, No. CV 12-10511-JFW VBKX, 2013 WL 5573045, at *23 (C.D. Cal. Oct. 9, 2013) as a similar case that applied the *Heck* bar.

Defendant fails to explain how the Temporary Custody Hearing Order falls within *Heck*'s parameters. It is not a criminal conviction or sentence, and Defendant does not point to any outstanding criminal judgment against Plaintiff that would be invalidated by a judgment in favor of Plaintiff in the instant case. *See VanGilder v. Baker*, 435 F.3d 689, 691–92 (7th Cir. 2006) ("[I]f the district court determines that the plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed[.]" (citation and internal punctuation omitted)); *see also Gakuba v. O'Brien*, 711 F.3d 751, 753 (7th Cir. 2013) ("But *Heck* does not apply absent a conviction."); *Willis v. Wagner*, No. 08 C 01964, 2012 WL 4597486, at *2 (N.D. Ill. Sept. 29, 2012) ("*Heck*'s bar only applies to charges for which the criminal defendant has been both convicted and sentenced."). For this reason, *Alberici* is distinguishable. *See Alberici*, 2013 WL 5573045, at *23 (where parents had pled no contest to violating California Welfare and Institutions Code

§300(b)—the equivalent to a plea of guilty or nolo contendre in a criminal proceeding in California—parents' First and Fourteenth Amendment familial association claims implicated the validity of the no contest pleas and were barred by *Heck*).

While the *Heck* bar does not fit this case, Defendant's concerns are not wholly misplaced. Plaintiff's substantive due process claim "runs contrary to the equity, comity, and federalism principles underlying our abstention doctrines" and this Court must abstain from exercising jurisdiction. *J.B.*, 997 F.3d at 721. One such abstention doctrine, set forth in *Younger v. Harris*, 401 U.S. 37 (1971), prevents courts from "resolving isolated legal issues that might matter to proceedings already before a state agency or judge." *Milchtein v. Chisholm*, 880 F.3d 895, 899 (7th Cir. 2018) (citing *South Bend v. S. Bend Common Council*, 865 F.3d 889 (7th Cir. 2017)). Although Defendant has not moved for *Younger* abstention, "the court may raise the issue *sua sponte*." *Boothe v. Sherman*, 66 F. Supp. 3d 1069, 1074 (N.D. Ill. 2014) (citing *Capra v. Cook Cty. Bd. of Review*, 733 F.3d 705, 713 n.5 (7th Cir. 2013); *Barichello v. McDonald*, 98 F.3d 948, 955 (7th Cir. 1996)). The *Younger* doctrine can apply where a plaintiff seeks injunctive relief or only monetary damages. *Id*. (citing *Gakuba*, 711 F.3d at 753; *Simpson v. Rowan*, 73 F.3d 134, 137–39 (7th Cir. 1995)).

"*Younger* generally requires federal courts to abstain from taking jurisdiction over federal constitutional claims that involve or call into question ongoing state proceedings." *FreeEats.com, Inc. v. Indiana*, 502 F.3d 590, 595 (7th Cir. 2007) (citation omitted). "*Younger* and its progeny 'require federal courts to abstain from enjoining ongoing state proceedings that are (1) judicial in nature, (2) implicate important state interests, and (3) offer an adequate opportunity for review of constitutional claims, (4) so long as no extraordinary circumstances—like bias or harassment— exist which auger against abstention." *Id*. at 596 (quoting *Majors v. Engelbrecht,* 149 F.3d 709,

17

711 (7th Cir. 1998)). "The doctrine applies in only three limited categories of cases . . . : where federal court intervention would intrude into ongoing state criminal proceedings, into state-initiated civil enforcement proceedings akin to criminal prosecutions, or into civil proceedings implicating a state's interest in enforcing orders and judgments of its courts." *J.B.*, 997 F.3d at 722. The temporary removal of a child in a child-abuse context is quasi-criminal in nature. *See Moore v. Sims*, 442 U.S. 415, 423 (1979).

Here, the circuit court proceeding is judicial in nature, implicates important state interests in a quasi-criminal proceeding, and offers adequate opportunity for review of constitutional claims. "Principles of comity and federalism permit states to resolve for themselves all legal contentions, including those based on the Constitution." *Milchtein*, 880 F.3d at 899. "Add to this the principle that federal courts are supposed to leave child-custody disputes to the states, . . . and [the Court has] a set of powerful reasons not to address" the issues presented by Plaintiff's claim. *Id*. (citing *Ankenbrandt v. Richards*, 504 U.S. 689 (1992)) (finding *Younger* doctrine prevented federal court from hearing parents' claim that Wisconsin court violated the Constitution by placing two children in foster care); *see also Huiras v. Cafferty*, No. 22-3081, 2023 WL 4842323, at *1 (7th Cir. July 28, 2023) (affirming dismissal based on *Younger* abstention of due process claim arising from state court child custody proceedings), *reh'g denied,* No. 22-3081, 2023 WL 5671672 (7th Cir. Sept. 1, 2023).

Nor is there any indication of extraordinary circumstances. "[A] district court should not abstain under *Younger* where: (1) the pending state proceeding was motivated by a desire to harass or is conducted in bad faith . . . ; or (2) the plaintiff has demonstrated an extraordinarily pressing need for immediate equitable relief that, if not granted, will irreparably injure the plaintiff[.]" *FreeEats.com*, 502 F.3d at 596–97. For the second exception to apply, "there (1)

must be no state remedy available to meaningfully, timely, and adequately remedy the alleged constitutional violation; *and* (2) that the litigant will suffer 'great and immediate' harm if the federal court does not intervene." *Id*. at 597 (quoting *Kugler v. Helfant*, 421 U.S. 117, 124–25 (1975)). "[A] federal court should assume that state procedures will afford an adequate remedy, in the absence of unambiguous authority to the contrary." *Id*. at 598 (internal punctuation and citation omitted).

First, Plaintiff "makes no allegations that the . . . state court is incompetent to adjudicate the issues in this case because of bias," or that the state action was initiated "based on a desire to harass or in bad faith." *Id*. at 597. Second, as noted above, state court procedures will afford Plaintiff an adequate remedy. Accordingly, there is no indication that extraordinary circumstances exist to militate against *Younger* abstention.

Even if the *Younger* doctrine is not "an exact fit" for the circumstances of this case, however, "[t]o insist on literal perfection . . . risks a serious federalism infringement." *J.B.*, 997 F.3d at 723. "It is not enough for [Plaintiff] to invoke § 1983 and point to his constitutional right to familial association. He cannot compel the adjudication of claims that would inject a federal court into a contested and ongoing family court custody dispute." *Id*. at 722.[7] In short, "[t]he adjudication of [Plaintiff's] due process claims threaten interference with and disruption of local family law proceedings—a robust area of law traditionally reserved for state and local government—to such a degree as to all but compel the federal judiciary to stand down." *Id*. at 724 (affirming district court's abstention, based on the general principles of federalism, from exercising jurisdiction over father's substantive and procedural due process claims against DCFS

---

[7] While the operative Complaint does not seek a stay of the circuit court proceedings, the Court notes the numerous times Plaintiff so moved since initiating this lawsuit. (*See* ECF Nos. 22, 26, 44.)

employees for investigation into alleged abuse that culminated in a state court order suspending

father's parenting time). "The abstention doctrines' underlying principles of comity, equity, and

federalism counsel [this Court] to abstain from exercising jurisdiction over

[Plaintiff's] § 1983 claims." *Id*. (citing *Courthouse News Serv. v. Brown*, 908 F.3d 1063, 1077

(7th Cir. 2018)). "'Unless and until the state courts have proven unwilling to address'

[Plaintiff's] alleged constitutional claims, '[this Court] should not exercise jurisdiction over the

matter.'" *Id*. at 725 (quoting *Courthouse News Serv.*, 908 F.3d at 1071)).

For all of these reasons, abstention is appropriate on Plaintiff's substantive due process

claim given the pending state action. Plaintiff's substantive due process claim is therefore

dismissed. *See J.B.*, 997 F.3d at 724–25 (affirming dismissal where a stay would be impractical

because state court custody proceedings over minor children would be continual for years); *Doe

v. Lindell*, No. 22-1666, 2023 WL 196467, at *4 (7th Cir. Jan. 17, 2023) (same). The Court need

not reach the issue of qualified immunity.

### ii. Fourteenth Amendment—Procedural Due Process

Abstention is also warranted to the extent Plaintiff states a procedural due process claim.

"In contrast to substantive due process claims, in procedural due process claims, the deprivation

by state action of a constitutionally protected interest in life, liberty, or property is not in itself

unconstitutional; what is unconstitutional is the deprivation of such an interest without due

process of law." *Brokaw*, 235 F.3d at 1020 (citation omitted) (cleaned up). The removal of a child

from her home "may simultaneously constitute a violation of . . . substantive due process rights

(if [her] removal was not justified by a sufficiently compelling governmental interest) and [the]

right to procedural due process (if the manner in which the deprivation occurred violates

procedural norms)." *Id*. at 1020 n.16. "[A] procedural due process claim involves a two-part

20

analysis: First, we determine whether the defendants deprived the plaintiff of a protected liberty or property interest, and if so, then we assess what process was due." *Id*. at 1020 (citing *Hamlin v. Vaudenberg*, 95 F.3d 580, 584 (7th Cir. 1996)).

Here, to the extent Plaintiff attempts to state a procedural due process claim, it is based on the same allegations as his substantive due process claim. In the above section, the Court concluded that deciding whether Defendant violated Plaintiff's right to familial relations would require this Court to call into question the Temporary Custody Hearing Order entered in pending state court proceedings. This Court abstained consistent with the *Younger* doctrine, or alternatively on the general principles of equity, comity, and federalism, from determining whether Defendant deprived Plaintiff of a protected liberty interest. Because that same question is central to determining whether Plaintiff states a procedural due process claim, abstention and dismissal are equally appropriate given the pending state court action.

### iii.   Other Possible Constitutional Claims

The remainder of the Complaint and Opposition are filled with constitutional jargon but contain few facts to support a plausible constitutional theory. Plaintiff alleges that he was denied "equal protection" under the law (Opp'n 2 of 9), but the Complaint lacks any facts establishing a plausible claim that Plaintiff was treated differently than any other persons. Such facts would be necessary to maintain an equal protection claim, since the Equal Protection Clause is "concerned . . . with equal treatment rather than with establishing entitlements to some minimum of government services." *Hilton v. City of Wheeling*, 209 F.3d 1005, 1007 (7th Cir. 2000). Thus, the Equal Protection Clause cannot serve as the constitutional basis for Plaintiff's claims against Defendant. *See Pelham v. Albright*, No. 3:11 CV 99, 2012 WL 1600455, at *8 (N.D. Ind. May 4, 2012).

Similarly, Plaintiff's Complaint and Opposition lack any facts on which the Court could infer an independent cause of action under the Ninth Amendment. *See Minority Police Officers Ass'n v. City of S. Bend*, 555 F. Supp. 921, 928 (N.D. Ind. 1983) (finding "plaintiffs' claims based on alleged Ninth Amendment rights must fail because there are no specific constitutional rights secured by that Amendment"), *aff'd in part, appeal dismissed in part*, 721 F.2d 197 (7th Cir. 1983).

Finally, Plaintiff alleges that Defendant "got [him] fired due to her lack of ability to serve [him] paperwork properly notifying [him] to go to work that Wednesday on June 29th[,] 2022." This sentence is borderline nonsensical. To the extent Plaintiff is attempting to assert a constitutional violation because Defendant failed to serve him with paperwork notifying him to go to work, the Court is unable to discern any such right in the Constitution.

## CONCLUSION

Defendant's motion to dismiss [55] is granted. The Court abstains from exercising jurisdiction over Plaintiff's substantive and procedural due process claims, which are dismissed without prejudice to Plaintiff's right to raise the same claims in a state tribunal. Plaintiff fails to state a claim for any other constitutional violations. Case dismissed. Civil case terminated.

**SO ORDERED.**                                  **ENTERED: May 17, 2024**

_____
**HON. JORGE ALONSO**
**United States District Judge**